TRUMAN ELDRIDGE

*v.*

TRUSTEES OF SCHOOLS *et al.*

*Filed at Ottawa November 17, 1884.*

1. REVERTING OF TITLE—*after use ceases—whether the circumstances will call for the re-investing of the title in a donor.* The owner of land donated, verbally, three-fourths of an acre thereof to a school district, for a school site, and built a school house thereon under contract with the directors, and then refused to convey, for the reason he was not paid for his work in the erection of the building, and the lot had not been fenced. After-

ward, a settlement was made, by which the district agreed to pay him and to fence the lot, and he agreed, upon performance, to make the district a warranty deed, and the contract was reduced to writing. The district performed the contract and obtained a decree for specific performance, under which he made an unconditional warranty deed, which being lost, he afterward made a quitclaim deed. On a change of districts, this ground was divided into lots, and sold, and was no longer used for school purposes. Thereupon, the original grantor filed his bill in equity, seeking to cancel his deed and have the title re-invested in him: *Held*, that he was not entitled to any equitable relief, there being no condition in his deeds or the decree that the land should revert in case of its ceasing to be used for school purposes.

2. CONSIDERATION—*for conveyance of school site.* The performance of the written agreement mentioned, by the directors of the school district, would constitute a sufficient consideration to support a warranty deed made to the trustees of schools for the use of the district, by the other party to the agreement.

3. DURESS—*making a deed in obedience to a decree—estoppel.* On bill for specific performance, a decree was entered directing the defendant to convey to the complainant a certain tract of land. A deed was executed accordingly. Subsequently, upon bill filed by the person so executing the deed, to set it aside and to re-invest himself with the title, it was contended in his behalf that he made the deed sought to be set aside under the coercion of the court,—but it was held that obedience to a valid decree could in no sense be regarded as legal duress. Moreover, he was as much estopped by the decree itself from prosecuting his claim for the land, as by the deed.

APPEAL from the Circuit Court of Warren county; the Hon. JOHN J. GLENN, Judge, presiding.

Mr. ALMON KIDDER, for the appellant.

Messrs. GRIER & DRYDEN, for the appellees.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The present controversy relates to the ownership of about three-quarters of an acre of land, being a part of the southwest quarter of section 30, township 9, north, range 2, west, in Warren county, this State.

The quarter section of which the lot in question is a part, was purchased from the United States by Truman Eldridge, the appellant, who received a patent therefor in 1848. In

37—111 ILL.

1853 the inhabitants of school district No. 5, in said town, (now district No. 1,) were desirous of procuring a site for a school house, and among others the lot of ground in question was offered by appellant, and accepted by the district for that purpose. The school directors shortly afterwards commenced building a school house on the site thus selected, the carpenter work for which was let out to appellant himself, at $350. During the summer of that year the house was completed. There seems to have been no definite understanding with respect to the transfer of the lot, or the terms or conditions, if any, upon which it was to be conveyed. In the spring of 1854 there was some dissatisfaction between appellant and the district, on account of what was due him for the carpenter work on the school house, and also in respect to enclosing the premises with a fence. On account of this misunderstanding, appellant refused to make a deed for the lot. The matter, however, was finally arranged, to the apparent satisfaction of all parties concerned, by the execution of a written agreement, by the terms of which the district obligated itself to enclose the premises with a fence, and to pay appellant's demand upon a specified day, with interest thereon at the rate of ten per cent; and the appellant, on his part, thereby covenanted, upon such payment, to execute to the trustees of schools of the township, for the use of the district, a good and sufficient warranty deed for the premises. This agreement was fully performed on the part of the district. The appellant, nevertheless, still refused to convey the property. In 1856 a bill was filed to enforce a specific performance of the above agreement, which, in 1858, resulted in a decree directing appellant to execute a warranty deed for the premises, in compliance with his said agreement, which he did. The deed, however, having been lost or mislaid, the cause was re-docketed in 1868, for the purpose of compelling the making of another deed, when, on the 19th of January, 1869, the parties came to terms, and the suit was settled by

appellant making a quitclaim deed in lieu of the one that was lost or mislaid. Matters remained in this condition until in 1881, when the district, having in the meantime been changed from No. 5 to No. 1, deemed it advisable to procure a new site for school purposes and sell the old one. With this view the trustees subsequently subdivided the premises in question into eight smaller lots, adapted to residence and business purposes, which, on the 9th of June, 1883, were sold to the appellees Gordon, Anderson, Buckley, Lewis and Pratt, respectively. On the 12th of December, following, the appellant filed the present bill, praying "that the quitclaim deed of January 19, 1869, and all proceedings, may be set aside as a cloud on the title of complainant; that all said deeds to buyers at such sale of June 9, 1883, and the proceedings of said directors and trustees relating to such sale, be adjudged illegal, and set aside as a cloud on the title of complainant." The cause was heard in the court below upon the pleadings and proof, resulting in a decree dismissing the bill for want of equity, and the complainant appealed to this court.

The exact theory of the bill in this case is not altogether apparent. If we are to judge of it by so much of the prayer as is above set forth, we would be warranted in the conclusion that it is simply a bill to remove a cloud from a title which at law is deemed sufficiently good. But the bill goes further, and asks that the possession of the premises be restored to the complainant, and in this respect it can only be regarded as what is known as a mere ejectment bill, and, of course, regarded as such it can not be maintained. As the bill does not seek to have a reconveyance of the property, it may be assumed the legal title is regarded as still being in the appellant, though this view is hardly to be reconciled with the statement in appellant's brief, to the effect that the "bill is against the trustees, as such, and relating to property in trust, held in trust by trustees and their grantees for a use, and to establish that use and establish the dedication, and

to compel such trustees and their grantees to return the property to the person rightfully entitled."

But it is useless to speculate as to what is the true theory of the bill, for it is clear, viewed from whatever legal aspect it may, there is no theory upon which it can be maintained. Concede, as claimed by appellant, that the lot was originally given by him, without consideration, for the purpose of a school site only, yet the fact is undisputed that before any writings were entered into with respect to it, appellant set up the claim that it was a part of the understanding that the district was to enclose the lot with a fence, and that he refused to make any conveyance until this was done and he was paid for his work on the school house. The district finally came to his own terms, and, as already shown, a written agreement was entered into between the parties to that effect, which was fully performed by the district,—and the performance of this agreement on its part was an ample and sufficient consideration for the warranty deed subsequently made by him. That deed was not only unconditional, but it expressly warranted the title in fee, and the appellant is thereby estopped from setting up any claim to the property.

To the suggestion that in making the deed appellant was acting under the coercion of the court, it is sufficient to say that obedience to a valid decree, which has never, in any manner, been questioned, as was the case here, can in no sense be regarded as legal duress. Moreover, the appellant is just as much estopped by the decree itself from prosecuting the present claim, as he is by the deed.

The decree of the court below is clearly right, and it must therefore be affirmed.

*Decree affirmed.*